# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER ROBISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CV-2205 NAB |
| | ) | |
| DUANE CLAWSON and ST. CHARLES | ) | |
| COUNTY, MISSOURI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Duane Clawson and St. Charles County's Motion for Summary Judgment. [Doc. 37.] The motion has been fully briefed. Heather Robison alleges that Defendants violated her rights under the Fourth Amendment, 42 U.S.C. § 1983, and Missouri tort law when she sustained injuries following her September 10, 2012 arrest. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

## I.  Background

Heather Robison filed suit against Defendants in November of 2012 alleging violations of the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and Missouri tort law related to her September 10, 2012 arrest and detention. On April, 29, 2013, Robison filed an Amended Complaint. [Doc. 16.] Robison has since withdrawn her claim against St. Charles County for Municipal Liability under the Fourteenth Amendment and § 1983 (Count II). [Doc. 43 p. 5.] She maintains claims against Duane Clawson for Excessive Force under the Fourth Amendment and § 1983 and Assault and Battery under Missouri law (Counts I and IV). She further maintains

claims against St. Charles County for *Respondeat Superior* under § 1983 and Missouri law (Counts III and IV).

### A.    Undisputed, Material Facts

At all relevant times, Duane Clawson acted under color of state law as a Corporal for the St. Charles County Department of Corrections.  On September 10, 2012, Robison was assaulted by her then boyfriend and sustained a laceration to her lip.  At the time, Robison had two bench warrants from the St. Charles Municipal Court for failure to appear on citations for speeding and expired plates.  The police were called to her boyfriend's residence and when the officer arrived, he arrested Robison on the warrants.

Robison was taken to the Booking Unit of the St. Charles County Jail at 11:03 p.m. on September 10.  Corporal Clawson was working the night shift in booking from 7:00 p.m. to 7:00 a.m.  Upon arrival, Robison was handcuffed to a bench in the booking room.  At some point, Corporal Clawson came in and began cussing and yelling at Robison about her blood on the floor and having to clean it up.  Corporal Clawson eventually uncuffed Robison and took her into a cinder block room across the hall from the elevators.  Robison was in the room with Corporal Clawson and a nurse.  Corporal Clawson was not carrying a baton but had a flashlight that was approximately six to eight inches long.  Robison stated that she wanted to go to the hospital to get her face stitched up.  The nurse told Robison she would do the stitches.  Robison refused treatment from the nurse.  The parties dispute whether Corporal Clawson then assaulted Robison.

Robison was formally booked at 7:32 a.m. on September 11, about a half hour after Corporal Clawson's shift ended, and was released at 9:50 a.m.  After her release, Robison received treatment at Barnes-Jewish St. Peters Hospital for the laceration to her lip.  In addition to the lip laceration, Robison's injuries were: (1) a bruise that ran from her forehead to her chin

on the right side of her face, (2) two identical bruises across the backs of her thighs, (3) sore ribs, and (4) the back of her head was split open. A photo was taken of Robison while she was at the jail but it has not been produced. Robison submitted three photos of her injuries that she took some time after she was released. [Doc. 42-5.] They depict her facial injuries and at least one of the bruises to the back of her thighs.

### B. Disputed, Material Facts

This case pits Robison's testimony against that of Corporal Clawson. In her deposition, Robison testified that when she arrived at the jail, she was left in the booking room by herself handcuffed to the bench and was still bleeding from her lip wound. At some point, she began yelling for help and that she wanted to go the hospital. Corporal Clawson came in. Defendants admit that Corporal Clawson was cussing and yelling at Robison. [Doc. 46 ¶ 22.] According to Robison, after Corporal Clawson brought her into the nurse's room and she refused treatment, Corporal Clawson struck her. She testified that she was standing when someone struck her such that she fell. She further testified that she does not remember anything after the first strike and that when she came to, she was back in the booking room. She began calling for someone so she could use the bathroom. Another officer, a black woman, came in and allowed Robison to use the bathroom. Robison complained to the officer that she needed to get her face stitched. Robison testified that she did not report the assault because everyone at the jail already knew. According to Robison, when she was being positioned for a photo, another officer later identified as John Pounds said "If that cunt moves, drop her" and made it clear that Robison would be hit again if she moved. Defendants admit that Robison somehow sustained injuries beyond the laceration to her lip. [Doc. 46 ¶ 31.]

Corporal Clawson denies assaulting Robison. In his deposition, he testified that the following officers were at the jail that night: Eric Bishop, April Staples, Corporal Baker, and himself. He testified that Bishop notified him that Robison was bleeding, at which point he went over and observed Robison. According to Corporal Clawson, Staples and Bishop cleaned up most of the blood and then he made the decision to move Robison, which Staples and Bishop carried out. Corporal Clawson testified that Robison was belligerent and her speech appeared slurred at the time he escorted her to the nurse's room.

## II.     Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Brandt v. Davis*, 191 F.3d 887, 891 (8th Cir. 1999). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A material fact is one that "might affect the outcome of the suit under the governing law" and a genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. There is no genuine issue of material fact where the non-moving party failed to "make a

showing sufficient to establish the existence of an element essential to that party's case …. since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden is on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57.  When the burden shifts, the non-moving party cannot rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002).  To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986).  Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  The non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334.  "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis*

*Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III.    Discussion

### A.    Excessive Force Claim

In Count I of her Complaint, Robison alleges that Corporal Clawson violated the Fourth Amendment and 42 U.S.C. § 1983 by using excessive force against her. The first step in analyzing a § 1983 excessive force claim is to identify "the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Fourth Amendment protects against deprivations of liberty and specifically, against the use of excessive force during an arrest, investigatory stop, or other "seizure" of a person. *Id.* at 388. By contrast, the Due Process Clause of the Fourteenth Amendment protects against conditions of pretrial confinement that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 533-34, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *see also Riley v. Dorton*, 115 F.3d 1159, 1162 (4th Cir. 1997) ("A deprivation of liberty … is not the same thing as a condition of confinement").

Defendants argue that, because Robison was detained pursuant to a warrant at the time of the alleged force, her claim should fall under the Fifth and Fourteenth Amendments, rather than the Fourth Amendment. In *Andrews v. Neer*, the Eighth Circuit outlined a continuum of excessive force claims brought by persons in custody:

> In … situations in which excessive force is alleged by a person in custody, the constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution. If the victim is an arrestee, the Fourth Amendment's "objective reasonableness" standard controls. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The evaluation of excessive-force claims brought by pre-trial

detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard. *Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048–49 (8th Cir.). While we have not drawn a bright line dividing the end of the arrestee's status and the beginning of the pre-trial detainee's status, *see, e.g., Wilson v. Spain,* 209 F.3d 713, 715 & n. 2 (8th Cir.2000), it is clear that the state may not punish a pretrial detainee. *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Williams–El v. Johnson,* 872 F.2d 224, 229 (8th Cir.1989). Excessive-force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 318–22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

253 F.3d 1052, 1060-61 (8th Cir. 2001).  Here, the question is whether Robison—arrested on a warrant, handcuffed to a bench in the booking room, and then uncuffed and taken to the nurse's room—was an "arrestee" protected by the Fourth Amendment or a "pretrial detainee" protected to a lesser extent under the Fourteenth Amendment.

In *Wilson v. Spain*, the Eighth Circuit noted, "Between arrest and sentencing lies something of a legal twilight zone. The Supreme Court has left open the question of how to analyze a claim concerning the use of excessive force by law enforcement beyond the point at which arrest ends and pretrial detention begins, and the circuits are split." 209 F.3d 713, 715 (8th Cir. 2000) (internal quotations and citations omitted).  The Fourth, Fifth, Seventh and Eleventh Circuits have held that the Fourth Amendment only applies to an initial arrest. *See Riley*, 115 F.3d at 1163-64.  The Second, Third, Sixth, Ninth, and Tenth Circuits extend coverage beyond that point. *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989) (Fourth Amendment applies to "period prior to the time when the person arrested is arraigned or formally charged, and remains in custody (sole or joint) of the arresting officer"); *United States v. Johnstone*, 107 F.3d 200, 205 (3d Cir. 1997) (Fourth Amendment applies when person arrives at station house garage after being transported from scene of initial arrest); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988) (Fourth Amendment applies "throughout the time the person remains in the

custody of the arresting officers); *Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1042-43 (9th Cir. 1996) (Fourth Amendment applies when in custody of arresting officers and to "the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest"); *Austin v. Hamilton*, 945 F.2d 1155, 1158-60 (10th Cir. 1991) (Fourth Amendment applies to "warrantless post-arrest [but pre-charge or pre-hearing] custody").

The Eighth Circuit has not set forth a bright line rule as to when an arrestee becomes a pretrial detainee. *Andrews*, 253 F.3d at 1060. In *Wilson v. Spain*, the plaintiff had been arrested for public intoxication, brought to the jail, almost allowed to leave, and then placed in a cell. 209 F.3d at 714. The plaintiff alleged excessive force immediately before and after being placed in the cell. *Id.* The Eighth Circuit analogized the case to *Mayard v. Hopwood* and *Moore v. Newark* where it had applied the Fourth Amendment to arrestees in the back of a police car and in the midst of the booking process.[1] *Id.* at 715-16; *Moore*, 146 F.3d 531 (8th Cir. 1998); *Mayard*, 105 F.3d 1226 (8th Cir. 1997). District courts have relied on *Wilson*, *Moore*, and *Mayard* in extending Fourth Amendment coverage significantly beyond an initial arrest. *See, e.g., McBride v. Clark*, 2006 WL 581139 (W.D. Mo. March 8, 2006) (applying Fourth Amendment to arrestee held on a warrant for suspicion of a drug-related offense); *Haggins v. City of St. Paul*, Report and Recommendation, 2010 WL 1380134 (D. Minn. March 1, 2010) (applying Fourth Amendment to arrestee being held and interviewed at detention center), *adopted as modified on other grounds*, 2010 WL 1379913 (D. Minn. March 31, 2010).

---

[1] The *Wilson* court ultimately held that the plaintiff could not sustain a claim for excessive force and, in applying the Fourth Amendment, "observe[d] that if Wilson cannot win his case under Fourth Amendment standards, it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, standards that must be met to establish a Fourteenth Amendment substantive due process claim." *Id.* at 716.

Defendants argue that even though other circuits have extended Fourth Amendment protection beyond an initial arrest, they have done so in cases where the plaintiff was arrested without a warrant. Citing the fact that Robison was arrested on a warrant, Defendants argue that under the law of any circuit, she is considered a pretrial detainee. However, the Eighth Circuit has never indicated that its analysis turns on whether an arrest was made with or without a warrant and at least one district court case has relied on Eighth Circuit precedent to apply the Fourth Amendment in the context of an arrest made with a warrant. *See McBride*, 2006 WL 581139. Furthermore, good reason exists to extend application of the Fourth Amendment and to apply it in the context of an arrest with a warrant. *See* Megan Shuba Glowacki, *The Fourth or Fourteenth? Untangling Constitutional Rights in Pretrial Detention Excessive Force Claims*, 78 U. CIN. L. REV. 1159, 1175-80 (2010).

Defendants next argue that, even under the Fourth Amendment, Robison's claim fails and that Corporal Clawson is entitled to qualified immunity. The Court disagrees. A defendant is <u>not</u> entitled to qualified immunity if there was a deprivation of a constitutional right and that right was clearly established such that a reasonable officer would understand his conduct was unlawful in the situation he confronted. *Henderson v. Munn*, 439 F.3d 497, 501-02 (8th Cir. 2006). The constitutional right to be free from excessive force is clearly established and the test is whether the amount of force used was objectively reasonable. *McGruder v. Heagwood*, 197 F.3d 918, 919 (8th Cir. 1999); *see also Wilson*, 209 F.3d at 716 ("[T]here is no question that Wilson's right to be free from excessive force was clearly established, even if there is some ongoing uncertainty about which constitutional text is the source of that right."). Because there is "at most only a conceptual difference between the determination of 'objective reasonableness' *vel non* for qualified-immunity purposes and for the holding on the merits," the Court will

address "in one fell swoop" both Corporal Clawson's qualified immunity and the merits of Robison's excessive force claim. *Wilson*, 209 F.3d at 716.

Viewed in the light most favorable to Robison, Corporal Clawson's conduct was not objectively reasonable. At the point when Corporal Clawson allegedly struck her, Robison had merely refused medical treatment and was not otherwise resisting or provoking Corporal Clawson. *See Coker v. Ark. State Police*, 734 F.3d 838, 843 (8th Cir. 2013) (reversing grant of qualified immunity; concluding reasonable jury could find that force used was excessive where plaintiff's evidence was that officer struck plaintiff with metal flashlight after plaintiff was already on the ground and complying with officer's demands); *Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003) (reversing summary judgment in excessive force claim based on qualified immunity where arrestee testified he was sitting in an unthreatening posture when jailors beat him). Nor is there any indication that Robison was "passively resistant." *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006). In addition, while Robison's injuries could be considered *de minimis*, that no longer forecloses her claim. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).

Defendants argue that Robison has not set forth sufficient evidence to proceed past the summary judgment stage. However, at the summary judgment stage in an excessive force case, when the plaintiff and defendant give conflicting accounts and there is no evidence that blatantly contradicts plaintiff's account such as a video or audio recording, the plaintiff's credibility is a jury question. *See Coker*, 734 F.3d 838, 843 (8th Cir. 2013); *Reed v. City of St. Charles*, 561 F.3d 788, 790-91 (8th Cir. 2009). "Of course, the jury may disbelieve [the plaintiff] at trial, but it is not [the court's] function to remove the credibility assessment from the jury." *Kukla v. Hulm*,

310 F.3d 1046, 1050 (8th Cir. 2002). The Court therefore denies summary judgment on Robison's Excessive Force claim against Corporal Clawson.

### B.    Assault and Battery Claims

In Count IV of her Complaint, Robison alleges that Corporal Clawson committed assault and battery against her under Missouri law. Corporal Clawson contends that he is entitled to summary judgment based on official immunity. Official immunity shields officials from liability for negligence in the performance of "discretionary, as opposed to ministerial, duties." *Brown v. Tate*, 888 S.W.2d 413, 415 (Mo. App. W.D. 1994). It "provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. App. W.D. 1991) (citing *Kanagawa v. State*, 865 S.W.2d 831, 835 (Mo. banc 1985)). "But official immunity does not apply to discretionary acts done in bad faith and with malice." *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005). Viewed in the light most favorable to Robison, Corporal Clawson acted in bad faith. The Court therefore denies summary judgment on Robison's Assault and Battery claim against Corporal Clawson.

### C.    Claims against St. Charles County

In Counts III and IV of her Complaint, Robison alleges that St. Charles County is liable under § 1983 and Missouri law for Corporal Clawson's conduct based on a *Respondeat Superior* theory. The Court recognizes that Robison alleges *Respondeat Superior* liability based on Justice Breyer's dissent in *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 416, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). However, current law does not allow for such liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978); *Rustici v. Weidemeyer*, 673 S.W.2d 762, 773 (Mo. 1984) (en

banc). The Court therefore grants summary judgment in favor of St. Charles County on Counts III and IV.

**IV.      Conclusion**

For the foregoing reasons, the Court grants summary judgment in favor of Defendant St. Charles County on Counts III and IV and denies summary judgment for Defendant Duane Clawson on Counts I and IV.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. [Doc. 37.]

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendant St. Charles County on Counts III and IV.

**IT IS FURTHER ORDERED** that summary judgment is **DENIED** for Defendant Duane Clawson on Counts I and IV.

Dated this 13th day of May, 2014.


    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE